Peggy J. CONNOR et al., Plaintiffs,

v.

Paul B. JOHNSON et al., Defendants.

Civ. A. No. 3830.

United States District Court,
S. D. Mississippi,
Jackson Division.

May 18, 1971.

Supplemental Opinion May 21, 1971.

George Peach Taylor, Constance Iona Slaughter, John L. Maxey, II, Danny E.

Cupit, R. Jess Brown, Geraldine H. Carnes, Community Legal Service, Jackson, Miss., Peter Marcuse, Waterbury, Conn., Kunstler, Kunstler & Kinoy, William M. Kunstler and Arthur Kinoy, New York City, Smith, Waltzer, Jones & Peebles, Benjamin Smith, Bruce C. Waltzer, New Orleans, La., Morton Stavis, Newark, N. J., Carl Rachlin, Melvin L. Wulf, A. C. L. U., New York City, Alvin Bronstein, Jackson, Miss., for plaintiffs.

A. F. Summer, Atty. Gen., State of Miss., William A. Allain, James Rankin, Edward Noble, Special Asst. Attys. Gen., Martin R. McLendon, Asst. Atty. Gen., Jackson, Miss., for defendants.

Before COLEMAN, Circuit Judge, and COX and RUSSELL, District Judges.

## OPINION OF THE COURT

WILLIAM HAROLD COX, District Judge.

On March 3, 1967, this Court found it inescapably necessary to enter a decree reapportioning the Senate and the House of Representatives of the State of Mississippi in accordance with the one man-one vote rule, Connor v. Johnson, 265 F. Supp. 492 (S.D., Miss., 1967). On March 27, 1967, the Supreme Court affirmed, 386 U.S. 483, 87 S.Ct. 1174, 18 L.Ed.2d 224, as to the attack upon Congressional redistricting. The judgment as to legislature reapportionment was not appealed.

The Legislature elected in compliance with that reapportionment (in the regular quadrennial elections of 1967) took no action on the subject until it obtained the benefit of the United States Census of 1970, the results of which were announced in December, 1970.

When the Legislature convened in its regular session of January, 1971, it commendably and expeditiously set about the enactment of a reapportionment to be used in the quadrennial elections of 1971, now imminently upon us. The Legislature passed House Bill No. 515, Laws of Mississippi of 1971, approved by the Governor on March 23, 1971.

Upon appropriate petition, the Constitutionality of House Bill No. 515 is now before us pursuant to our retained jurisdiction, 265 F.Supp. at 499. The original plaintiffs, as well as the State, have filed written briefs. We have heard oral argument. The matter must now be decided. The deadline for formal qualification of candidates in the State Democratic primary is June 4, 1971. The first primary election is August 3, 1971.

The duty of the Legislature (and of this Court when compelled to act) in the distribution of legislative seats among the various electoral districts of the State has been clearly delineated by the Supreme Court. Population is the *starting* point for consideration and is the *controlling* criterion for judgment in legislative reapportionment controversies. The fundamental principle of representative government in this Country is that there must be equal representation for equal numbers of people, without regard to race, sex, economic status, or place of residence within the State, Reynolds v. Sims, 1964, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506. It would, of course, be futile for this Court to attempt to ignore the commands of Supreme Court decisions. Indeed, to do so, were we to shrink from the duty imposed upon us, would be to invite the possibility of void elections in 1971, with consequent electoral chaos and unnecessary expense to the public.

Flotorial districts are permissible if they comply with the overriding objective of reapportionment, which is substantial equality of population among the various districts, so that the vote of any citizen is approximately equal in weight to that of any other citizen, Reynolds v. Sims, *supra*; Davis v. Mann, 1964, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609; Burns v. Richardson, 1966, 384 U.S. 73, 86 S.Ct. 1286, 16 L.Ed.2d 376.

The size of the legislative body is a matter left solely to the discretion of the State. Neither the Legislature nor this Court is authorized to interfere with the size of the State Senate or of the State House of Representatives as ordained by the people in the State Consti-

tution, Reynolds v. Sims, *supra*, 377 U.S. at 580, 84 S.Ct. 1362.

In our former decision, 265 F.Supp. at 494, we held that the legislative reapportionment of December 1, 1966, was unconstitutional on its face, null, and void. This alluded *not to the size of the two houses*, as ordained by a vote of the people on the Constitutional Amendment of 1962, but applied only to the distribution of the prescribed number of legislative seats among the 2,178,141 inhabitants of Mississippi as enumerated in the Census of 1960. Section 254 of the Mississippi Constitution, as amended by a vote of the people in 1963, provides that the House shall be composed of 122 members. Section 255 of the Constitution, as so amended, provides that the number of Senators shall be 52.

■ A reading of House Bill No. 515, of the Laws of Mississippi of 1971, the statute presently under consideration reveals that the Legislature, believing it had the authority to do so because of our prior decision, sought to raise the membership of the Mississippi Senate from 52 to 55 and the membership of the Mississippi House of Representatives from 122 to 125. Under this plan, even with the added seats, we find the following as to Senatorial Districts:

1st District, over-represented by 10.97%.

17th District, under-represented by 11.60%.

22nd District, over-represented by 13.58%.

25th District, under-represented by 10.66%.

29th District, over-represented by 14.26%.

31st District, over-represented by 10.87%.

33rd District, over-represented by 12.11%.

34th District, over-represented by 11.30%.

No rational basis for these variances is recited in either House Bill No. 515 or in available legislative history.

Similar variances appear in the reapportionment of the House of Representatives. We do not encumber this opinion with a list of those variances because the deficiencies as to the Senate alone require the invalidation of the plan.

■ The immediacy of legislative elections for the entire membership of both the House and the Senate leaves no rational course but to revise the distribution of seats in the Mississippi Senate and House of Representatives so as to comply with Constitutional standards. We intend to interfere as little as possible with what the Legislature has done.

We have considered many plans, including those suggested by the plaintiffs, in the hope of attaining, *as nearly as possible,* equality in population among the several districts, without regard to race, sex, economic status, or place of residence within the State. We have made a good-faith effort to achieve equality in the population of the various electoral districts for the selection of Senators and Representatives in the Legislature of the State of Mississippi. The plan hereinafter set forth, district by district, for the membership of both houses represents our best effort to attain equality, fitting 52 Senators on the one hand and 122 Representatives on the other within the borders of the State, *using those legal boundaries for which we have dependable population figures* from the United States Census of 1970. As we stated in our former decision, 265 F.Supp. at 494, which the Supreme Court approved, we have cast to one side any purpose of discrimination or favoritism of any kind.

According to the Census of 1970 Mississippi had a population of 2,216,912. Divided by 52, this means that the *norm* (absolute equivalent) for each Senatorial seat would be 42,633 people. Divided by 122, the *norm* for each House seat would be 18,171 people. The required objective is to attain this norm as nearly as possible, for each House and Senatorial seat.

Pursuant to this approach, it is hereby determined that the districts for the

election of 52 Senators and 122 Representatives in the Mississippi Legislature, until constitutionally changed by the Legislature, shall be, and they are, established as hereinafter set out.

It is to be noted that the Court has made every endeavor to avoid multiple member districts, composed of more than one county. There are, however, only eleven of the eighty-two counties with enough population to elect a Senator. There are only 44 counties, of eighty-two, with enough population to elect a Representative. It has thus been necessary to combine counties to achieve that degree of population equality required by the Constitution.

Except where noted, all elections are to be held district-wide, that is, the entire district shall participate in the nomination and election of its quota of members in both the House and the Senate.

In districts electing more than one member, all candidates shall qualify and be elected by *Posts*, appropriately numbered to correspond with the number of offices to be filled.

There shall be thirty-three (33) Senatorial Districts, as follows:

| District Number | County or Counties | Number of Senators | Total Population of District | Percentage of Population above or below norm (per seat) |
| --- | --- | --- | --- | --- |
| 1. | DeSoto, Lafayette, and Marshall | 2 | 84,093 | 1.375 − |
| 2. | Benton, Pontotoc, and Union | 1 | 43,964 | 3.122 + |
| 3. | Alcorn and Tippah | 1 | 43,031 | .934 + |
| 4. | Itawamba, Monroe, Prentiss and Tishomingo | 2 | 85,963 | .819 + |
| 5. | Lee | 1 | 46,148 | 8.245 + |
| 6. | Chickasaw, Clay, and Lowndes | 2 | 85,345 | .094 + |
| 7. | Calhoun, Choctaw, Montgomery, and Webster | 1 | 46,028 | 7.963 + |

| District Number | County or Counties | Number of Senators | Total Population of District | Percentage of Population above or below norm (per seat) |
|---|---|---|---|---|
| 8. | Panola and Yalobusha | 1 | 38,744 | 9.122 — |
| 9. | Quitman, Tate, and Tunica | 1 | 46,286 | 8.568 + |
| 10. | Coahoma | 1 | 40,447 | 5.127 — |
| 11. | Bolivar and Sunflower | 2 | 86,456 | 1.396 + |
| 12. | Humphreys and Washington | 2 | 85,182 | .099 — |
| 13. | Leflore | 1 | 42,111 | 1.224 — |
| 14. | Grenada and Tallahatchie | 1 | 39,192 | 8.071 — |
| 15. | Holmes, Issaquena, Madison, Sharkey, and Yazoo | 2 | 91.835 | 7.705 + |
| 16. | Attala, Carroll, and Leake | 1 | 46,052 | 8.020 + |
| 17. | Neshoba and Winston | 1 | 39,208 | 8.034 — |
| 18. | Noxubee and Oktibbeha | 1 | 43,040 | .955 + |
| 19. | Kemper and Lauderdale | 2 | 77,320 | 9.319 — |
| 20. | Newton and Scott | 1 | 40,352 | 5.350 — |

| Dis-trict Number | County or Counties | Number of Senators | Total Popu-lation of Dis-trict | Per-cent-age of Popu-lation above or be-low norm (per seat) |
|---|---|---|---|---|
| 21. | Rankin | 1 | 43,933 | 3.049 + |
| 22. | Hinds | 5 | 214,973 | .849 + |
| 23. | Warren | 1 | 44,981 | 5.507 + |
| 24. | Claiborne, Copiah, Lincoln, and Simpson | 2 | 80,980 | 5.027 — |
| 25. | Adams, Amite, Franklin, Jefferson, and Wikinson | 2 | 79,461 | 6.809 — |
| 26. | Pike and Walthall | 1 | 44,256 | 3.807 + |
| 27. | Covington, Jefferson Davis, Jones, Lawrence, and Marion | 3 | 117,303 | 8.285 — |
| | [For the method of election in this District see Footnote 1.] | | | |
| 28. | Clarke, Jasper, and Smith | 1 | 44,604 | 4.623 + |
| 29. | George, Greene, Perry, and Wayne | 1 | 46,719 | 9.584 + |
| 30. | Forrest, Lamar, and Stone | 2 | 81,159 | 4.816 — |

| Dis-trict Number | County or Counties | Number of Senators | Total Population of District | Per-centage of Population above or below norm (per seat) |
|---|---|---|---|---|
| 31. | Hancock and Pearl River | 1 | 45,189 | 5.995 + |
| 32. | Harrison | 3 | 134,582 | 5.226 + |
| 33. | Jackson | 2 | 87,975 | 3.178 + |

## FOOTNOTE NO. 1

In the twenty seventh District, Jones County shall nominate and elect the Senator to Post 1, the remaining counties shall nominate and elect the Senator to Post 2, and Post 3 shall be nominated and elected by the District at large. Posts 1 and 2 each have more than enough population to meet the norms, and the surplus complies with the norm a third time.

## THE HOUSE OF REPRESENTATIVES

There shall be forty-six (46) Districts for the election of Members of the House of Representatives, as follows:

| Dis-trict Number | County or Counties | Number of Representatives | Total Population of District | Per-centage of Population above or below norm (per seat) |
|---|---|---|---|---|
| 1. | Alcorn, Benton, and Tippah | 3 | 50,536 | 7.297 − |
| | [For the method of election in this District see Footnote 2]. | | | |
| 2. | Prentiss and Tishomingo | 2 | 35,073 | 3.489 − |
| 3. | DeSoto and Marshall | 3 | 59,912 | 9.906 + |

# THE HOUSE OF REPRESENTATIVES

There shall be forty-six (46) Districts for the election of Members of the House of Representatives, as follows:

| District Number | County or Counties | Number of Representatives | Total Population of District | Percentage of Population above or below norm (per seat) |
|---|---|---|---|---|
| 4. | Itawamba, Lee, and Monroe | 5 | 97,038 | 6.808 + |
| | [For the method of election in this District see Footnote 3]. | | | |
| 5. | Chickasaw | 1 | 16,805 | 7.517 − |
| 6. | Pontotoc | 1 | 17,363 | 4.447 − |
| 7. | Union | 1 | 19,096 | 5.091 + |
| 8. | Calhoun and Lafayette | 2 | 38,804 | 6.775 + |
| 9. | Panola and Yalobusha | 2 | 38,744 | 6.609 + |
| 10. | Tate | 1 | 18,544 | 2.053 + |
| 11. | Coahoma, Quitman, and Tunica | 4 | 68,189 | 6.186 − |
| | [For the method of election in this District see Footnote 4]. | | | |
| 12. | Tallahatchie | 1 | 19,338 | 6.422 + |
| 13. | Sunflower | 2 | 37,047 | 1.943 + |
| 14. | Bolivar | 3 | 49,409 | 9.361 − |
| 15. | Issaquena and Washington | 4 | 73,318 | .875 + |
| 16. | Holmes and Humphreys | 2 | 37,721 | 3.797 + |
| 17. | Carroll and Leflore | 3 | 51,508 | 5.514 − |
| 18. | Grenada and Montgomery | 2 | 32,772 | 9.823 − |

## THE HOUSE OF REPRESENTATIVES

There shall be forty-six (46) Districts for the election of Members of the House of Representatives, as follows:

| District Number | County or Counties | Number of Representatives | Total Population of District | Percentage of Population above or below norm (per seat) |
|---|---|---|---|---|
| 19. | Attala | 1 | 19,570 | 7.699 + |
| 20. | Winston | 1 | 18,406 | 1.293 + |
| 21. | Choctaw and Webster | 1 | 18,487 | 1.739 + |
| 22. | Clay | 1 | 18,840 | 3.682 + |
| 23. | Lowndes, Noxubee, and Oktibbeha | 5 | 92,740 | 2.075 + |

[For the method of election in this District see Footnote 5].

| | | | | |
|---|---|---|---|---|
| 24. | Kemper and Lauderdale | 4 | 77,320 | 6.378 + |

[For the method of election in this District see Footnote 6].

| | | | | |
|---|---|---|---|---|
| 25. | Clarke, Jasper, and Newton | 3 | 50,026 | 8.233 − |

[For the method of election in this District see Footnote 7].

| | | | | |
|---|---|---|---|---|
| 26. | Leake and Neshoba | 2 | 37,887 | 4.254 + |

[For the method of election in this District see Footnote 8].

| | | | | |
|---|---|---|---|---|
| 27. | Scott and Smith | 2 | 34,930 | 3.885 − |
| 28. | Madison and Rankin | 4 | 73,670 | 1.359 + |

[For the method of election in this District see Footnote 9].

## THE HOUSE OF REPRESENTATIVES

There shall be forty-six (46) Districts for the election of Members of the House of Representatives, as follows:

| District Number | County or Counties | Number of Representatives | Total Population of District | Percentage of Population above or below norm (per seat) |
|---|---|---|---|---|
| 29. | Sharkey and Yazoo | 2 | 36,241 | .275 — |
| 30. | Claiborne and Warren | 3 | 55,067 | 1.018 + |
| 31. | Hinds | 12 | 214,973 | 1.414 — |
| 32. | Copiah and Jefferson | 2 | 34,044 | 6.323 — |
| 33. | Adams | 2 | 37,293 | 2.620 + |
| 34. | Amite, Franklin, and Wilkinson | 2 | 32,873 | 9.543 — |
| 35. | Lincoln and Pike [For the method of election in this District see Footnote 10]. | 3 | 57,954 | 6.312 + |
| 36. | Simpson | 1 | 19,947 | 9.774 + |
| 37. | Covington, Jefferson Davis, and Lawrence | 2 | 38,075 | 4.771 + |
| 38. | Marion and Walthall | 2 | 35,371 | 2.669 — |
| 39. | Forrest and Lamar | 4 | 73,058 | .517 + |
| 40. | Jones | 3 | 56,357 | 6.120 + |
| 41. | Wayne | 1 | 16,650 | 8.371 — |
| 42. | Greene and Perry | 1 | 17,610 | 3.087 — |

## THE HOUSE OF REPRESENTATIVES

There shall be forty-six (46) Districts for the election of Members of the House of Representatives, as follows:

| District Number | County or Counties | Number of Representatives | Total Population of District | Percentage of Population above or below norm (per seat) |
|---|---|---|---|---|
| 43. | Pearl River and Stone | 2 | 35,903 | 1.205 — |
| 44. | Hancock | 1 | 17,387 | 4.315 — |
| 45. | Harrison | 7 | 134,582 | 5.806 + |
| 46. | George and Jackson | 6 | 100,434 | 7.881 — |

### FOOTNOTE NO. 2

DISTRICT 1.

Alcorn County has more than enough population to meet the norm for one seat. Benton and Tippah have more than enough population to meet the norm for one seat. The surplus is enough for a third norm. Therefore, Alcorn County shall elect one representative, Post 1; Benton and Tippah Counties shall elect one representative, Post 2; and Post 3 shall be elected from the District at large. Wherever the word "election" is used herein it refers also to primary nominations.

### FOOTNOTE No. 3

DISTRICT 4.

Lee County has 26% more population than required for two seats, Monroe County lacks 7% having sufficient population for two seats, Itawamba County lacks 8% of enough population for one seat. Therefore in District 4, the County of Lee shall elect two representatives, Posts 1 and 2; the County of Monroe shall elect one representative, Post 3, the County of Itawamba shall elect one representative, Post 4, and one representative, Post 5 shall be elected from the District at large.

### FOOTNOTE NO. 4

DISTRICT 11.

In compliance with the norms as hereinabove explained, Coahoma County shall elect two representatives, Posts 1 and 2; the Counties of Quitman and Tunica shall elect one representative, Post 3, and one representative, Post 4, shall be elected by the District at large.

FOOTNOTE No. 5

DISTRICT 23.

In compliance with the norms as indicated in Footnotes 2 and 3, the County of Lowndes shall elect two representatives, Posts 1 and 2, the Counties of Noxubee and Oktibbeha shall elect two representatives, Posts 3 and 4, and one representative, Post 5, shall be elected from the District at large.

FOOTNOTE NO. 6

Under the Constitution of 1890 (until 1964) Kemper County had two representatives. Under the reapportionment ordered by this Court in 1967, 265 F.Supp. at 497, Kemper County joined Neshoba County in the election of two representatives. Under the 1970 Census Kemper County has only 10,233 people, or 43% of the norm for a representative. If combined with Neshoba County for two representatives the District would be 14% below the norm; if combined with Neshoba for one representative the District would be 70% above the norm. To stay within the norms, the only alternative is to combine the County with Lauderdale, which has nearly seven times as much population. Kemper is on the Alabama line and there is no other place to put it. It is also combined with Lauderdale County for the election of Senators, for the same reasons. The effect of this is that while a vote in Kemper County would theoretically be equal to one in Lauderdale, the practicalities, on a seven to one basis, would be to disenfranchise the voters of Kemper County as to the election of either a representative or senator from that County. To meet this situation in a manner which we believe would meet with the approval of the Supreme Court, we direct that all candidates for representative residing in Kemper County shall qualify for Post Number 4 and that no candidate from Lauderdale County shall be allowed to qualify for that Post, but the election shall be from the District at large. Our solution is to have one representative a resident of Kemper County but chosen by the people of the District as a whole.

FOOTNOTE NO. 7

DISTRICT 25.

In this District, Newton County shall elect one representative, Post 1; the Counties of Clarke and Jasper shall elect one representative, Post 2; and one representative shall be elected from the District at large, Post 3.

FOOTNOTE NO. 8

DISTRICT 26.

In this District, Leake County has a population of 6.5% under the required norm, while Neshoba County has a population 14.5% in excess of the norm. The representatives shall be elected from the District at large, but those candidates residing in Neshoba County shall qualify for Post 1, and those residing in Leake County shall qualify for Post 2.

FOOTNOTE NO. 9

DISTRICT 28.

In this District, Madison County shall elect one representative, Post 1; Rankin County shall elect two representatives, Posts 2 and 3, and one representative shall be elected from the District at large, Post 4.

FOOTNOTE NO. 10

DISTRICT 35.

In this District, Pike County shall elect one representative, Post 1; Lincoln County shall elect one representative, Post 2; and the third representative shall be elected by the District at large, Post 3.

———◆———

It will be noted from the foregoing that no district for the election of Senators varies from the norm by as much as 10% and 15 districts vary by less than 5%. As to the House of Representatives no district varies from the norm by as much as 10% and 21 vary by less than 5%.

In Mississippi each County is divided into five beats, which are the units of county government. Supervisors, school board members, local election commissioners, justices of the peace, and constables, (local county officials) are elected from the beats. The plaintiffs have suggested that a more nearly equal apportionment might be attained in some instances by separating a beat from the county to which it belongs and adding it to another county in order to attain a population figure more closely approaching the norm and in order to create districts for the election of a single legislator. It is the opinion of the Court, however, that such action is not necessary in order to attain satisfactory reapportionment, as the hereinabove tables of population clearly demonstrate.

There are two added objections. First, the County has always been the only unit of state government. The boundaries have been fixed by statute for generations. Every citizen, regardless of his lack of education or other opportunities, knows the county of his residence and where he is expected to vote. There are 410 beats in Mississippi, the boundaries of which may be, and often are, changed by order of the Board of Supervisors. Beat lines generally follow governmental land lines as laid down by section, township, and range—in other words invisible to all, and unknown to most. It is a rare individual who knows where a beat line is at any given point, although most are able to keep up with the general location of the beat for the purpose of electing local officials with whom the voter is personally acquainted. Even worse, in our opinion, is the thought that a beat taken from one county and arbitrarily annexed to another for the sole purpose of attaining a desired, arbitrary population ratio, would, in practical effect, destroy the weight of the vote of the annexed (minority) beat. The voter would *appear* to be voting on an equality, and mathematically this would be so, but his chance of influencing the outcome desired by the great majority living in the adjoining county would be ephemeral.

We, therefore, adhere to county lines as the best, fairest and most effective method of delineating districts for the election of state legislators in Mississippi. When a voter asks for bread there is no point in handing him, instead, a stone which is dressed up with figures to look like bread.

We are of the further opinion, however, that some merit is to be found in the objections of the plaintiffs to the election of large numbers of representatives from the counties at large in metropolitan areas such as Hinds, Harrison, and Jackson Counties.

Hinds County is entitled to twelve representatives, Harrison County is entitled to seven, Jackson County is entitled to five (without George). The Mississippi Constitution of 1890 divided several Counties, *within the county*, for the election of representatives, generally along judicial district lines. In our opinion, a County which elects three representatives or less presents no problem because the candidates are required to run by Posts, which eliminates multitudes from entering the same contest, to the consequent confusion of issues and personalities. When, however, a county, within its own borders, elects four or more representatives it would be ideal if it could be divided into districts, for the election of one member to the district. Under the reapportionment plan herein adopted by this Court the following Counties elect four or more senators or representatives from within their own borders: Hinds, Harrison, and Jackson.

There is no evading the fact that with the time left available it is a matter of sheer impossibility to obtain dependable data, population figures, boundary locations, etc. so as fairly and correctly divide these counties into districts for the election of single members of the Senate or the House in time for the elections of 1971. However, the legislatures to be chosen in 1975 and 1979 will be based on the Census of 1970. This Court now states, therefore, that as of January 1, 1972, it expects to appoint a special master to take testimony and make findings as to whether the Counties of Hinds, Harrison, and Jackson may feasibly be divided into districts of substantially equal numbers in population for the elections of 1975 and 1979 and to file his recommendations with this Court for appropriate adjudication. As to this, jurisdiction is retained.

The reapportionment plan herein set out *as to all other Counties is final* and subject to no further review by this Court.

As provided by Rule 52, Federal Rules of Civil Procedure, this opinion shall constitute the findings of fact and con-clusions of law in this case. This opinion, signed by the Judges of this Court, shall also constitute and is hereby expressly declared to be the formal judgment of this Court in the premises and shall be recorded as such.

It being found that the Legislature of the State of Mississippi has not acted capriciously or arbitrarily or oppressively in its efforts to reapportion itself, the respective parties hereunto shall bear their own costs.

A copy of this opinion, duly certified, shall be served upon each Member of the Election Commission of the State of Mississippi and upon the Clerk of the Mississippi House of Representatives and the Secretary of the Mississippi State Senate and due return made of such service. The Clerk of the House and the Secretary of the Senate are respectfully requested to have this opinion and judgment printed as soon as possible for the use of the Membership of the respective branches of the Legislature.

This being the action of a Court of the United States, sitting in equity, and not State action, and this being for the purpose of complying with the one man-one vote requirements of the United States Constitution involving no racial discrimination in the exercise of the franchise under the Fifteenth Amendment, we are of the opinion that it is not necessary that this reapportionment plan be submitted to the Attorney General of the United States or the Courts of the District of Columbia under the Voting Rights Act of 1965, as extended, 42 U.S. C. §§ 1971, 1973 et seq.

This judgment shall be in full force and effect from and after this date.

### ORDER AMENDING AND SUPPLEMENTING JUDGMENT DATED MAY 18, 1971

Heretofore, on May 18, 1971, this Court entered judgment in the above styled and numbered cause. This Order, now made and entered by the Court, sua sponte, amends and supplements that Judgment to the extent hereinafter in-

dicated; otherwise, said Judgment of May 18, 1971 remains in all respects unchanged and in full force and effect.

The division of the State of Mississippi into 46 districts for the election of Representatives shall remain unchanged.

The identification of Posts in Districts 8, 9, 23, 29, 32 and 43 shall be and is hereby made more specific, to-wit:

District 8. Only residents of Lafayette County shall qualify as candidates for Post. 1.

District 9. Only residents of Panola County shall qualify as candidates for Post 1.

District 23. Only residents of Oktibbeha County shall qualify as candidates for Post 3.

District 29. Only residents of Yazoo County shall qualify as candidates for Post 1.

District 32. Only residents of Copiah County shall qualify as candidates for Post 1.

District 43. Only residents of Pearl River County shall qualify as candidates for Post 1.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

In District 8, Lafayette County has a population of 24,181, or 33⅓% more than the number of people required [by the norm of 18,171] for the election of one representative in its own right. To complete a district which would be as near as possible to the norm for the election of representatives Calhoun County with a population of 14,623 was joined with Lafayette for the election of two representatives, resulting in a district which came within 6.775% of the norm.

Similar steps were taken in the following districts:

District 9, Panola, population 26,826, joined with Yalobusha, 11,195.

District 23. In Posts 3 and 4, Oktibbeha had, population 28,752 was joined with Noxubee, population 13,288.

District 29. Yazoo, population 27,304, joined with Sharkey, population 8,937.

District 32, Copiah, population 24,749, joined with Jefferson, 9,295.

District 43. Pearl River County, population 27,802, joined with Stone, population 8,101.

Therefore, the first named county in each of the foregoing districts has at least 33⅓% more than enough population to elect a representative in its own right in compliance with the state norm. Other counties [i. e., Districts 5, 6, 7, 10, 12, 19, 20, 22, 36, 41 and 44] with populations of approximately 18,000 are permitted a representative because they have the required number of people and happen to be so fortunately situated geographically that no combination with any other county was required.

It is, therefore, appropriate that counties with populations at least 33⅓% in excess of the norm should be entitled to a representative residing within their borders, although the election is to be from the District at large, so that all the people in the District participate in the choice.

This amendment and supplement to the Judgment of May 18, 1971 will result in a more equitable application of the one man-one vote rule and renders less likely the loss of representation by those clearly entitled to it. Moreover, by this arrangement the counties with the smaller population will participate in the election of two representatives, whereas, under the norm they could, standing alone, have elected no representative at all.

It is further ordered that if any candidate in Districts 8, 9, 23, 29, 32 and 43 has qualified as a candidate since May 18, 1971 not in conformity with this Judgment, then the appropriate authority shall conform the qualification to this Judgment so as to allow the candidacy to proceed.

### ORDER OVERRULING MOTION OF PLAINTIFFS FOR APPOINTMENT OF SPECIAL MASTER TO CREATE SINGLE MEMBER DISTRICT IN HINDS COUNTY

It is the firm view of this court as announced at the outset of the trial in

this case that race shall have nothing whatsoever to do with a reapportionment plan for the election of members of the Mississippi Legislature under the one man-one vote rule. Hinds County was last redistricted by this court in Civil Action No. 4483 by order dated December 19, 1969 with an accompanying plan under separate cover. There was a vast change made in the location and boundaries of the five districts of Hinds County between the 1960 and 1970 census. The 1970 census does not reflect sufficient information as to any identifiable segment of voters in said five districts to enable the court to make any dependable disposition of such problem at this time. More information and more study by the court will be necessary before the court can properly decide upon the question presented. It is the view of the entire court that such motion at this time is without merit and should be overruled. Said motion is accordingly denied.

The undersigned as managing judge in this case, with permission of the entire court, accordingly signs and enters this order for the court.