**Peggy J. CONNOR et al., Plaintiffs,**

**v.**

**Paul B. JOHNSON et al., Defendants.**

**Civ. A. No. 3830.**

United States District Court,
S. D. Mississippi,
Jackson Division.

June 16, 1971.

John Maxey, George Peach Taylor, and Fred Banks, Jr., Jackson, Miss., for plaintiffs.

A. F. Summer, State Atty. Gen., William Allain, and James E. Rankin, Spec. Asst. Attys. Gen., Jackson, Miss., for defendants.

Before COLEMAN, Circuit Judge, and COX and RUSSELL, District Judges.

OPINION OF COURT ON REMAND FROM SUPREME COURT STAYING ORDER DATED JUNE 3, 1971

PER CURIAM.

Hinds County, Mississippi is entitled to twelve Representatives and five Senators in the Mississippi Legislature.

In our decision of May 18, 1971, 330 F.Supp. 506 we held: "There is no evading the fact that with the time left available it is a matter of sheer impossibility to obtain dependable data, population figures, boundary locations, etc. so as fairly and correctly divide these counties (including Hinds) into districts for the election of single members of the Senate or the House in time for the elections of 1971" (page 519).

On June 3, 1971, in a Stay Order, the Supreme Court, 402 U.S. 690, 91 S.Ct. 1760, 29 L.Ed.2d 268, instructed this Court, "absent insurmountable difficulties," to devise and put into effect *a single member* district plan for Hinds County by June 14, 1971.

Within less than forty-eight hours, with the consent of the litigants, this Court on June 5, 1971 held an evidentiary hearing for the purpose of complying with that order of the Supreme Court.

## FINDING OF FACTS, CONCLUSIONS OF LAW AND REPORT TO THE SUPREME COURT

Pursuant to the foregoing, this Court now makes the following finding of facts, conclusions of law and report to the Supreme Court.

1. Like every county in Mississippi, as required by the State Constitution, Hinds County is divided into five beats (supervisor districts) which are designated numerically from one to five.

2. Likewise, as required by state law, these beats are divided into voting precincts with specifically defined boundaries for holding of elections. All citizens residing within the boundaries of a precinct register with the County Registrar for that precinct, and vote at a polling place opened at a designated location within the precinct. Ballots are printed, or voting machines are programmed for the individual precinct.

3. Mississippi uses permanent registration of voters; that is, once a voter registers to vote in a particular precinct, he remains so registered until he moves away, dies, or a new registration is compelled by redistricting the county, or such similar event.

4. In 1969, under Federal Court order, the five beats in Hinds County were reapportioned under the one man, one vote rule. This, of course, required radical changes in the beat lines theretofore existing, and also in precinct lines. *For some reason, unrevealed by evidence in this case, the U.S. Census of 1970 was taken according to old beats, and not according to the new.* In the meantime, a new registration to conform to the changed beat lines is proceeding in Hinds County, but the deadline for registration to vote in the next Legislative election does not occur until July 2, 1971 (four months prior to the general election and thirty days prior to the primary). So the registration process is not yet complete and the number of voters who will participate is not yet known.

5. At the evidentiary hearing, plaintiffs readily conceded that the plan originally submitted to this Court by plaintiffs, and later filed with the Supreme Court, was based on an erroneous precinct map.

6. Since existing census maps did not and do not tally with precinct lines, the population of the various precincts cannot be established, except by estimate.

7. At the evidentiary hearing, the plaintiffs declined to agree to the use of the new beats as a basis of subdividing the county because these reconstituted beats are not of substantially equal population, as vigorously asserted by the plaintiffs.

8. Confronted with this impossible situation and after due deliberation, this Court on June 8, 1971 appointed William D. Neal, a particularly well qualified person, as Special Master with directions that he explore every possibility under the record before the Court of dividing the county into single member districts for the election of twelve Representatives and five Senators from Hinds County, and report to this Court.

The order appointing the Special Master is hereto appended as Exhibit "A."

9.  The Special Master submitted and filed his report to this Court on June 14, 1971. His report is hereto appended as Exhibit "B." Upon filing said report, the Court gave reasonable notice under the circumstances to the parties of the filing of said report, and invited exceptions thereto within a given time. Exceptions to said report have been filed by the plaintiffs, and have been duly examined and considered by the Court; and the Court being of the opinion that such exceptions and the amendment thereto are without merit and should be denied. The Special Master was not vested with any power to receive any further evidence, or testimony, but was employed by the Court out of an abundance of precaution as a recognized expert in this field to point out to this Court, if he could in the record before the Court, how this Court could comply with the order of the Supreme Court in creating single member districts in Hinds County for the election of Senators and Representatives for the State Legislature in the 1971 primaries. Those exceptions in the main are couched in conclusions and contentions which are lacking in this record in factual support. The plaintiffs virtually admit the impossibility of such task and seek to deviate from the record before the Court by suggesting the creation of multimember districts for the election of such officials in Hinds County, contrary to the orders and directions of the Supreme Court.

10.  The Special Master, for the reasons enumerated in his report, concluded that no accurate or reliable population totals are available by new supervisors district lines, or new precinct lines. There appears to be no way, except by a new enumeration of population, to accurately determine the number of people within existing precinct boundaries.

Under these facts and circumstances, this Court finds as an irrefragable fact that it is confronted with insurmountable difficulties against the division of Hinds County, Mississippi into separate single member districts for the election of five Senators and twelve Representatives.

After having thus exhausted every resource at its command to comply with the order of the Supreme Court, and finding it even now to be impossible to do so, this Court is of the opinion that Senators and Representatives from Hinds County to the Mississippi Legislature must be elected from the county at large in the 1971 elections, unless otherwise subsequently ordered by the Supreme Court. The objections and exceptions to the report of the Special Master are without merit and should be denied. The motion of the defendants to modify the former finding of facts and conclusions of law of this Court in this case is without merit and will be denied. The defendants misconceive the function of the Special Master, and the scope and range of the duties assigned to him. Neither party has any vested right to a hearing on exceptions to such a report, and this Court finds such exceptions to be without merit and to have no possible effect upon the ultimate disposition of this case. There is simply nothing in the evidence in this case, or even in the argumentive exceptions of the plaintiffs to show anybody in search of the truth that single member districts for these legislative offices in Hinds County can be created with any reliable and dependable evidence in this record as support therefor. The time for Senators and Representatives to qualify as candidates for said offices in Hinds County, Mississippi is extended until noon on Saturday, June 19, 1971, and candidates for said offices should be permitted to qualify as candidates therefor on or before said time and date.

This Court is further of the opinion that twenty-five copies of the judgment of this Court on remand, accompanied by twenty-five copies of these findings and conclusions, should be immediately transmitted by air mail to the Clerk of the Supreme Court of the United States for their further information and imme-

diate use in this case. These findings and conclusions constitute the unanimous opinion of this Court and shall be certified with and as a part of the record and judgment of this Court.

## EXHIBIT A

Before COLEMAN, Circuit Judge, and COX and RUSSELL, District Judges.

## ORDER APPOINTING SPECIAL MASTER

On June 3, 1971, the Supreme Court of the United States entered an order staying the judgment of this Court dated May 18, 1971 in the above styled and numbered cause, with directions that Hinds County, Mississippi, absent insurmountable difficulties, be divided into five districts for the election of State Senators and twelve districts for the election of Representatives in the Mississippi Legislature;

On June 5, 1971, with the consent of the parties, this Court held a plenary hearing to determine if such could be accomplished from data now available or obtainable, as a result of which this Court now finds it impossible on the present record to accomplish such a division of Hinds County into single member districts for the election of representatives and senators in the Mississippi Legislature.

Now, therefore, in a further effort to comply with the Order of the Supreme Court dated June 3, 1971, it is by this Court

Ordered

That William D. Neal, a citizen of Hinds County, Mississippi, former State Auditor, with adequate computer facilities immediately available to him, and a person highly competent to serve as such, be and he is hereby appointed Special Master in this case to make surveys, computerized and otherwise, of all available data, maps, and other information pertinent to the problem, and to propose a valid plan, if such be possible, for the division of Hinds County as directed by the Supreme Court, all to be done and filed with this Court not later than June 14, 1971, and sooner if possible.

The said Special Master shall file with this Court a written report of his findings, conclusions, and/or recommendations.

Before entering upon his duties as Special Master the said William D. Neal shall before the Clerk of this Court, or one of his deputies, take the following oath:

I, William D. Neal, do solemnly swear that I will faithfully, to the best of my skill and ability, discharge the duties devolving upon me as Special Master by appointment and order of the United States District Court for the Southern District of Mississippi in the case of Connor v. Johnson, so help me God.

The Clerk of this Court and the parties to this litigation shall make available to the Special Master all maps, exhibits, census data, precinct data, and any other information which may be of any possible assistance to the Special Master and requested by him for use in the performance of his duties.

The Special Master shall be allowed his actual expenses and such just and reasonable compensation for his services, and other necessary costs, as may be later allowed and approved by this Court, to be taxed according to law.

So ordered, this June 8, 1971.

FOR THE COURT BY UNANIMOUS DIRECTION

(s) Jas. P. Coleman

United States Circuit Judge

## EXHIBIT B

## REPORT OF SPECIAL MASTER

On June 3, 1971, the United States Supreme Court issued its Order staying the Hinds County legislative reapportionment plan issued by this Court on May 18, 1971, until June 14, 1971. The stay Order instructed the District Court,

" * * * absent insurmountable difficulties, to devise and put into effect a single-member district plan for Hinds County by that date."

The stay Order was filed in the District Court on June 4, 1971. On June 5, 1971, a hearing was held before the District Court and oral and documentary proof was received and admitted. On June 8, 1971, the Court entered its Order appointing William D. Neal as Special Master: " * * * to make surveys, computerized and otherwise, of all available data, maps, and other information pertinent to the problem, and to propose a valid plan, if such be possible, for the division of Hinds County as directed by the Supreme Court, * * * "

On the same day the Special Master took the oath of office and began studying the voluminous documents and record.

On June 9, 1971, the Special Master, following notice to the attorneys for the parties, held a hearing at which additional documentary evidence was requested. No additional documents were filed by either attorneys for Plaintiffs or Defendants.

Pursuant to the instructions of the Court, the Special Master has devoted his entire time from the date of his appointment to the date of this report examining the record, including Plaintiffs' proposed plan, and made diligent effort to comply with the task assigned.

This Report consists of two parts. First is an analysis of Plaintiffs' proposed plan for election by district of members of the House of Representatives and Senate from Hinds County. This is followed by a report on the efforts of the Special Master to fashion single-member districts for the House of Representatives and Senate of Hinds County as ordered by the Court and the results thereof.

### I.

An analysis of Plaintiffs' proposed plan reveals certain discrepancies that make proposals for both the House of Representatives and Senate outside constitutionally permissive bounds.

### HOUSE OF REPRESENTATIVES PROPOSAL

Plaintiffs' Exhibit 11, styled "Plaintiffs' Proposed Plan for Election by District of Members of the Mississippi House of Representatives from Hinds County," filed in the District Court on May 17, 1971, describes House of Representatives District Number 1, as follows:

"House District Number 1 covers the western portion of Hinds County beginning with the Copiah County line north along Highway 51 to a juncture of Terry Road and Highway 80, running generally west and north to a junction with the Natchez Trace, southwest of Clinton and along the Trace to northwest of Clinton and west along the old Supervisors Beat No. 1 line to its junction with the north-south boundary of old Supervisors Beat No. 2 line, and north along the common boundary to the Madison-Hinds County line. All area in Hinds County west of the above line is in District 1.

"District 1 contains enumerator districts 93, 94, 91, 92, 95, 96, 97, 98, 99, 142, 149, 150, 151, 194, 197, 198, 199, 200, 201, 202, 203, and 204.

"The total population of District 1 is 17,784."

The description includes most of the area of Hinds County that is sparsely inhabited. It also includes a large area of the County and the City of Jackson that is densely populated.

Enumerator district numbered 196 containing 1140 people is not listed above, but it must have been included in order to arrive at the stated total population listed.

In addition to the enumerator districts listed by Plaintiffs in their description, the area described above also includes all of enumerator districts numbered 195, 191, 152, 193, 190, 153, 185, 184, 189, 188 part, 181, 180 part, 178,

179, 174, 175, 176, 177, 173A, 173B, 134, 129, 128, 156, 157, 154, 160, 158, 159, 162, 192A, 192B, and 161, within the County and City wherein 35,901 people reside, according to the census print out that is a part of Plaintiffs' evidence.

The total population for House of Representatives District Number 1 as described above is no less than 53,685. Using the state-wide norm of 18,171 persons for the election of one Representative to the House of Representatives, the Representative elected from House of Representatives District Number 1 of Hinds County, according to Plaintiffs' description and own evidence, will represent more than 53,685 persons or 295 per cent above the state-wide norm.

Subtracting the number of people that would be represented by the Representative elected from the area described in Plaintiffs' House of Representatives District number 1 from the total population of the County leaves only 161,288 people to be represented by the remaining eleven Representatives. Assuming that data and population figures corresponding to voting precinct lines were to suddenly become available and that equal division of the remainder of the County could be accomplished, each of the remaining eleven Representatives would represent 14,663 people or 19.3 per cent below the state-wide norm.

The discrepancies shown above are reminiscent of the pre Baker v. Carr [369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663] era that has been so drastically altered by that case and other decisions of the courts.

Furthermore, the area described above includes parts of Plaintiffs' proposed Representatives Districts numbered 2, 3 and 4 by overlapping descriptions.

In addition thereto, Plaintiffs' House of Representatives proposal is replete with many deficiencies comparable with those set forth below in regard to Plaintiffs' proposed Senate plan.

## SENATE PROPOSAL

Plaintiffs' Senate districting plan for proposed districts numbered 2 and 3 overlap proposed districts numbered 4 and 5. Enumerator districts geographically located within certain proposed districts are claimed for other proposed districts for population count. The proposed districts split enumerator districts so that it is not possible to accurately determine the total population for any one of the proposed Senate districts.

The proposed districts use enumerator districts without regard to precinct lines. In many instances, the descriptions of the districts as contained in Plaintiffs' Exhibit 11 do not coincide with district lines as represented to exist by Plaintiffs' Exhibit 12C. In addition thereto, Plaintiffs' Exhibit 11 does not contain consistent references to proposed boundary lines. For example, old and new Supervisors lines are used to connect streets and roads, precinct lines, section lines, without including the township and range of the sections sought to be used, county lines, railroad lines, and enumerator district lines, and treat as adjacent points in Hinds County, parts of areas thereof that are not even remotely connected, whereas a proper legal description should contain consistent and uniform references in order to be useful.

Specific illustrations of the foregoing discrepancies, in addition to those obvious on the faces of Plaintiffs' Exhibits 11 and 12C, are set forth in Exhibit "A" appended hereto and made a part hereof by reference.

For the foregoing reasons, Plaintiffs' proposals, both for the House and Senate, are unusable for the election of Representatives and Senators. The proposals were found to have so many basic defects that your Special Master recommends to the Court that the plans be rejected in their entirety.

## II.

Preliminary to attempting to comply with the Order of the Court, it was determined that Hinds County should be considered as if it were a large building to be divided into five separate rooms with equal populations in each room for the Senate. The same building was to

be divided into twelve separate rooms with equal populations for the House of Representatives.

The total population of Hinds County, according to the evidence available, is 214,973. Dividing that figure by five establishes a County norm of 42,995 for each Senate district. Dividing the total population by twelve establishes a norm of 17,914 for each House of Representatives District.

The census material available consists of a computer print out of the Official 1970 Census of Population of Mississippi, the total population of Hinds County being 214,973, total population of the City of Jackson being 153,968, and the total population of Hinds County outside the City of Jackson, including all other municipalities in the County, being 61,005.

The Special Master initiated a concentrated and diligent effort to establish single-member districts, both for the Senate and the House, as directed by the Court. It was determined early that the census figures available for the accomplishment of the task were limited to figures tabulated by "census enumeration districts" and that these districts were rarely coterminous with individual precinct lines.

A more complicated effort was then employed in pursuance of the attempt to lay out single-member districts.

Multiple enumerator district lines were coordinated with multiple precinct lines to create the smallest units possible with compatible boundaries in order to determine the population of such single or multiple-precinct units. This was accomplished for the City of Jackson and for the County area outside Jackson.

This grouping of enumerator districts and precincts is shown in Exhibit "B", entitled "Contiguous Precincts with Coterminous Precinct and Census Enumerator District Boundary Lines and Showing Population of Each Area," appended hereto and made a part hereof.

As will be seen from said Exhibit "B", it was possible to arrange precinct areas of established population of sizes small enough for use in many sections of the City of Jackson, except in area 6, where the smallest population area that could be established contains a population of 24,943—too large a population for one House seat.

This same difficulty was compounded in the County area outside of the City of Jackson. Here, no matter the approach employed, the Special Master was unable to devise any areas of coterminous enumerator-precinct lines other than two. One of these, in the northeast part of the County, contains a population of 13,399, and appears on Exhibit "B" as area 1.

The Special Master then encountered an insurmountable obstacle in that coterminous enumerator district-precinct areas could not be found, except for an area containing all of the remaining twenty-four precincts of the County, with a population of 47,606—too large by approximately eleven per cent (11%) for a single-member Senatorial District and too large by some one hundred sixty-six per cent (166%) for a single-member House District.

Of course, with one district, according to the groupings shown on Exhibit "B", being outside the constitutionally permissible bound of ten per cent (10%) above or below the norm, it would not be possible with any combination of groupings to draw the remaining districts within that norm. The Special Master attempted to fashion single-member House and Senate Districts of contiguous territory from the groupings of enumerator districts by precincts shown on Exhibit "B". This effort was unsuccessful. Although some single-member districts could be fashioned, portions of the County would have had to have been represented by multi-member Senators and Representatives.

The Orders of the Supreme Court and of the District Court were to fashion single-member districts. That task is not possible with the population data presently available.

Unfortunately, for the purposes presently at hand, no accurate and reliable population totals are available by new Supervisors District lines or new precinct lines. There appears to be no way except by a new enumeration of population to accurately determine the number of people within existing precinct boundaries.

By way of conclusion, your Special Master recommends that the election of Senators and Representatives from Hinds County for the year 1971 be conducted in the manner originally directed by the District Court in its Opinion issued on May 18, 1971. Your Special Master further recommends that with the filing of this report, the Court enter its Order discharging him from further duties and responsibilities herein.

Respectfully submitted this the 14th day of June, 1971.

(s) William D. Neal

WILLIAM D. NEAL,
SPECIAL MASTER

EXHIBIT A

SENATE DISTRICT IV

I Analysis of Plaintiff's Exhibit 11 proposed plan for Senate District IV

| ED No's | Population |
|---|---|
| 49 | 688 |
| 47 | 994 |
| 48 | 579 |
| 42 | 485 |
| 41 | 1,478 |
| 165 | 13 |
| 44 | 331 |
| 43A | 1,571 |
| 43B | 1,121 |
| 38 | 1,153 |
| 39 | 1,062 |
| 40 | 1,125 |
| 35 | 2,047 |
| 37 | —0— |
| 17 | 1,172 |
| 16 | 1,000 |
| 15 | 1,230 |
| 13 | 1,765 |
| 14 | 535 |
| 18 | 486 |
| 11 | 683 |
| 12 | 609 |
| 9 | 1,219 |
| 8 | 797 |
| 10 | 944 |
| 7 | 2,654 |
| 5 | 767 |
| 3 | 1,647 |
| 78 | 683 |
| 77 | 2,122 |

EXHIBIT A

SENATE DISTRICT IV

I Analysis of Plaintiff's Exhibit 11 proposed plan for Senate District IV

| ED No's | Population |
|---|---|
| 2A | 1,946 |
| 2B | 519 |
| 1 | 2,717 |
| 75A | 62 |
| 75B | 296 |
| 76 | 87 |
| 6 | 855 |
| 167 | 876 |
| 166 | 896 |
| 53 | 427 |
| 52 | 242 |
| | 39,883 |

Note 1: Exhibit 11 actually totals 39,-883—while narrative gives population at 43,119, a difference of 3,236.

Note 2: All population in ED 47 which is included in Plaintiff's Exhibit 11 as being in Senate District IV reside in Senate District V.

Note 3: With the loss of that population count in ED 47 the actual total of Senate District IV would be 38,889.

Note 4: ED 54 containing a population of 32 was not listed as being in Senate District IV when it is located entirely therein.

Note 5: ED 49 lies partly in Senate Districts IV and V.

SENATE DISTRICT IV

ED's not included in Exhibit 11

| ED No. | Population |
|---|---|
| 4 | 3,204 |

SENATE DISTRICT V

I Analysis of Plaintiff's Exhibit 11 proposed plan for Senate District V

| ED No's | Population |
|---|---|
| 178 A & B | 1,909 |
| 126 | 1,244 |
| 125 | 713 |
| 124 | 1,053 |
| 110 | 768 |
| 112 | 808 |
| 72 | —0— |
| 71 | 475 |
| 70 | 2,725 |

SENATE DISTRICT V—Continued

I  Analysis of Plaintiff's Exhibit 11 proposed plan for Senate District V

| ED No's | Population |
|---|---|
| 68 | 558 |
| 109 | 894 |
| 111 | 918 |
| 106 | 1,499 |
| 107 | 2,659 |
| 132 | 1,011 |
| 133 | 1,400 |
| 172 | 1,326 |
| 171 | 15 |
| 169 | —0— |
| 104 | 897 |
| 103 | 488 |
| 101 | 1,293 |
| 105 | 933 |
| 108 | 731 |
| 67 | 430 |
| 66 | 252 |
| 65 | 1,174 |
| 64 | 970 |
| 69 | 1,012 |
| 63 | 1,104 |
| 62 | 403 |
| 56 | 1,367 |
| 60 | 1,119 |
| 61 | 463 |
| 59 | 1,702 |
| 51 | 851 |
| 52 | 600 |
| 50 | 1,275 |
| 58 | 1,270 |
| 57 | 823 |
| 55 | 629 |
| 168 | 200 |
| 164 B | 1,213 |
| 163 | 61 |
| 164 A | 201 |
| 102 | 124 |
| 100 | 1,199 |
| 45 | —0— |
| 46 | 1,293 |
| | 44,052 |

Note 1: ED 47 should have been included in Senate District V with an additional population count of 994.

Note 2: ED 49 lies partly in both Senate Districts IV and V.

Note 3: ED 130 omitted from District V with population of 1,394. (Was included in Senate District II in Plaintiff's Exhibit 11.)

Note 4: All of ED 52 was included in Senate District V in Plaintiff's Exhibit 11, but same lies partly in IV and partly in V.

Note 5: ED 133, population 1,400, listed in Plaintiff's Exhibit 11 tabulation of population as being entirely with Senate District V, is excluded both in metes and bounds description and in map layout; same actually being within Senate District II.

Note 6: Plaintiff's Exhibit 11 metes and bounds description includes all of the area comprising ED 32 (population 1,634) and approximately one-third (⅓) of ED 31 with total population of 1,694 (⅓ of same being 565) while tabulation of ED's and population in same Plaintiff's Exhibit 11 nor on Plaintiff's map, Exhibit 12A, but includes same in Senate District III. Corrected figures to coincide with Exhibit 11 metes and bounds description would increase population of Senate District V by *2,199* and decrease population of Senate District III by same amount.

Note 7: Total population in Senate District V using notes 1, 3, 5 and 6 would be 47,239. No adjustment has been made for notes 2 and 4.

SENATE DISTRICT V

Comments:

The Plaintiff's Exhibit 11, laying out proposed Senate and House Districts by metes and bounds, and Plaintiff's Exhibit 12A, being a map on which said district lines purportedly follow said metes and bounds description, fail in numerous instances to be the same. A few examples follow:

1. Metes and bounds description per Plaintiff's Exhibit 11 contains gap in description from NW corner of precinct 49 to SW corner of precinct 63—treated as continuity

of District line—but does not account for boundary of precinct 64 which lies between.

2. Metes and bounds description, after reading "North along the western boundary of Precinct 56 to Woodrow Wilson Drive" then reads "Then east on Woodrow Wilson along the northern boundaries of Precincts 10, 6, and 7 to State Street". In so doing this boundary omits passing along the northern boundaries of precincts 20 and 8.

3. Said description does not agree with supporting map presented as Exhibit 12A because said district line as shown on Exhibit 12A does not run along northern boundary of precinct 10 but along its western, southern, and eastern sides back to Woodrow Wilson Blvd.

## EXHIBIT B

### HINDS COUNTY, MISSISSIPPI
#### CONTIGUOUS PRECINCTS WITH COTERMINOUS PRECINCT AND CENSUS ENUMERATOR DISTRICT BOUNDARY LINES AND SHOWING POPULATION OF EACH AREA

| Area No. | Precincts | Census Enumerator Districts | Population |
|---|---|---|---|
| 1. | Sherwood Forest<br>Twin Pines<br>Liberty Grove<br>Cynthia<br>Flag Chapel<br>North Clinton<br>Tinnin<br>Pocahontas | 75A, 75B, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 143, 88, 89, & 90 ............. | 13,399 |
| 2. | Jackson 44<br>"  45 | 1, 2A, 2B, 3 ............. | 6,829 |
| 3. | Jackson 36<br>"  35<br>"  34 | 4, 5, 6 ................. | 4,826 |
| 4. | Jackson 32<br>"  33 | 43, 43B, 44 | 3,023 |
| 5. | Jackson 42<br>"  43 | 7, 8 | 3,451 |
| 6. | Jackson 12<br>13<br>14<br>15<br>16<br>17<br>29<br>40<br>41<br>39<br>38<br>37 | 42, 38, 19, 37, 36, 20, 35, 17, 16, 15, 41, 13, 14, 18, 40, 39, 12, 11, 9, 10 | 24,943 |
| 7. | Jackson 8<br>9 | 165, 46, 47, 48, 49 | 3,567 |

EXHIBIT B (Continued)

## HINDS COUNTY, MISSISSIPPI
### CONTIGUOUS PRECINCTS WITH COTERMINOUS PRECINCT AND CENSUS ENUMERATOR DISTRICT BOUNDARY LINES AND SHOWING POPULATION OF EACH AREA

| Area No. | Precincts | Census Enumerator Districts | Population |
|---|---|---|---|
| 8. | Jackson 6<br>7<br>4<br>10<br>3<br>2<br>5<br>1<br>46<br>47 | 50, 51, 32, 59, 61, 62, 60, 52, 56, 58, 55, 168, 164B, 163, 164A, 53, 166, 167, 54, 57 | 16,284 |
| 9. | Jackson 23<br>27<br>30 | 21, 23, 26 | 7,394 |
| 10. | Jackson 11 | 31, 33, 34 | 3,114 |
| 11. | Jackson 28<br>31 | 27, 28, 29, 30 | 6,150 |
| 12. | Jackson 21<br>22 | 24, 25 | 2,142 |
| 13. | Jackson 18<br>19 | 63, 64, 65, 66 | 3,542 |
| 14. | Jackson 20 | 69, 70 | 3,695 |
| 15. | Jackson 24<br>25<br>26 | 22, 119, 120, 121 | 5,119 |
| 16. | Jackson 60<br>61 | 73, 74, 116, 117, 118 | 3,261 |
| 17. | Jackson 62 | 122, 123 | 2,169 |
| 18. | Jackson 65 | 130 | 1,394 |
| 19. | Jackson 54<br>55<br>56<br>57<br>58<br>59 | 115, 113, 114, 72, 112, 71, 124, 125, 126, 127 | 8,142 |
| 20. | Jackson 50<br>51<br>52<br>53 | 107, 110, 109, 68, 108, 111, 106, 105, 171, 100, 101, 102, 67 | 12,021 |
| 21. | Jackson 63<br>64<br>66 | 132, 172, 131, 133 | 5,723 |

EXHIBIT B (Continued)

## HINDS COUNTY, MISSISSIPPI
### CONTIGUOUS PRECINCTS WITH COTERMINOUS PRECINCT AND CENSUS ENUMERATOR DISTRICT BOUNDARY LINES AND SHOWING POPULATION OF EACH AREA

| Area No. | Precincts | Census Enumerator Districts | Population |
|---|---|---|---|
| 22. | Jackson 48 | 103, 104, 169 | 1,385 |
| 23. | Jackson 49 | 170, 170B | 1,909 |
| 24. | Jackson 70 71 | 134B, 134, 173A, 173B, 174 | 3,761 |
| 25. | Jackson 67 | 128, 129 | 2,024 |
| 26. | Jackson 68 | 177 | 2,400 |
| 27. | Jackson 69 | 175, 176 | 2,325 |
| 28. | Jackson 72 73 | 180, 181 | 3,822 |
| 29. | Jackson 74 75 | 178, 179 | 3,850 |
| 30. | Jackson 76 | 184, 185 | 2,854 |
| 31. | Jackson 77 | 182, 183 | 2,849 |
| 32. | Bolton Brownsville Byram Cayuga. Chapel Hill Clinton 1 Clinton 2 Clinton 3 Clinton 4 Dry Grove Edwards Forest Hill Learned Midway Old Byram Raymond 1 Raymond 2 Red Hill Terry Utica 1 Utica 2 Van Winkle 1 Van Winkel 2 Woodville Heights | 91, 92, 93, 94, 95, 96, 97, 98, 99, 135, 135B, 136, 137, 138, 139, 140, 141, 142, 145, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 187, 188, 189, 190, 191, 192A, 192B, 192C, 193, 194, 195, 196, 197, 198, 199, 200, 201, 203, 204, 146, 147, 144, 202, 186 | 47,606 |
| TOTAL POPULATION HINDS COUNTY | | | 214,973 |

RECAPITULATION:

| | | |
|---|---|---|
| Population: | City of Jackson | 153,968 |
| | Hinds County Outside Jackson | 61,005 |
| | | 214,973 |