Frank CHARGOIS, Jr., et al.,

v.

VERMILION PARISH SCHOOL BOARD et al.

Cleve THIBODEAUX et al.,

v.

VERMILION PARISH SCHOOL BOARD et al.

Civ. A. Nos. 17633, 17816.

United States District Court,
W. D. Louisiana,
Lafayette Division.

June 29, 1972.

George M. Strickler, Jr., Elie, Bronstein, Strickler & Dennis, New Orleans, La., J. Isaac Funderburk, Thompson & Sellers, Abbeville, La., for plaintiffs.

Charles R. Sonnier, Asst. Dist. Atty., Abbeville, La., for defendants.

## OPINION and JUDGMENT

PUTNAM, District Judge.

These consolidated cases were filed to require reapportionment of the Vermilion Parish School Board and Police Jury. Since there was no question whatsoever that the districting plan for both bodies in effect at the time the suits were filed was unconstitutional under the "one man, one vote" rule announced by the Supreme Court in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L. Ed.2d 663 (1962) and made applicable to local governing bodies in Avery v. Midland County et al., 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), the School Board and Police Jury developed new districting plans to submit to this Court without seeking to argue the validity of the existing plan. The Police Jury originally submitted a plan calling for a fourteen member police jury elected from single-member districts. The School Board proposed a fifteen member board to be elected from eight districts, three of which would be multi-member

districts. The plaintiffs in the Thibodeaux case also submitted a proposed nine-member, single-member district plan to the Court. The consolidated cases were set for hearing on June 19, 1972.

■ After examining all the plans submitted, this Court decided that none were acceptable. Both plans submitted by the Police Jury and the School Board deviated too far from the "one man, one vote" standard to pass constitutional muster. Both plans had deviation factors (the maximum spread of deviation from ideal population equality between the most underrepresented and most over-represented districts) of approximately 17%. In Abate v. Mundt, 403 U.S. 182, 91 S.Ct. 1904, 29 L.Ed.2d 399 (1971), the Supreme Court approved an apportionment plan for a New York county which contained a deviation factor of 11.9% but the court cautioned that its decision was based on very peculiar local conditions involving the historical overlapping of governmental functions between the county and townships within it. The court further stated that, "nothing we say today should be taken to imply that even these factors could justify substantially greater deviations from population equality" 403 U.S. at 187, 91 S.Ct. at 1908. Thus, in light of Abate and other recent Supreme Court decisions, Kirkpatrick v. Preisler, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969); Wells v. Rockefeller, 394 U.S. 542, 89 S.Ct. 1234, 22 L.Ed.2d 535 (1969), this Court had no choice but to reject the plans originally proposed by the Board and Police Jury.

■ The nine member plan proposed by Mr. Thibodeaux promised very low deviations among the districts, but the plan was not actually supported by real population figures. Like the Police Jury and School Board plans, the nine member plan was based on 1970 U.S. census enumeration districts and like the plans proposed by the defendants, some of these districts were split in order to achieve closer population equality. But unlike the defendants' plans, the population figures for those districts consisting of partial enumeration districts were not determined by a census, but were the product of estimation. The Court could not, of course, approve such an inexact plan. This Court is also of the opinion that it should not impose an apportionment plan on the local governing body, charged with the duty of reapportioning itself, until it has been demonstrated that it is either unable or unwilling to develop a constitutional plan of its own. Moreover, it is doubtful that the Court has the authority to order a substantial reduction of the membership of the local governmental unit in question, as proposed by plaintiffs in the *Thibodeaux* case. See, Sixty-Seventh Minnesota State Senate v. Beens, 405 U.S. 985, 92 S.Ct. 1477, 32 L.Ed.2d 1 (1972).

At the June 19th hearing, none of the parties chose to put on evidence in support of their plans and this Court rejected all three proposed plans for the reasons above stated and ordered the Police Jury and School Board to devise a new plan or plans to be submitted by June 26th. In the interim, both bodies were placed on a "weighted vote" system.

■ The Police Jury and School Board have now developed a single redistricting plan applicable to both bodies and have submitted the plan to the Court. The new plan calls for fourteen member bodies to be elected from single-member districts. The plan is fully described in the resolutions of the Police Jury and School Board attached to our Decree. Under this plan the most over-represented district deviates from the ideal of population equality by 2.5% and the most under-represented district deviates by 2.5%, resulting in a total deviation factor of 5.0%. This Court finds that this plan complies with the Constitutional "one man, one vote" standard of Baker v. Carr, supra, and its progeny. The plaintiffs in the *Thibodeaux* case have not submitted a new plan, nor have they submitted firm population figures to this Court to support their original nine-member plan.

We make no finding as to whether or not the plan proposed by the School Board and Police Jury is racially discriminatory. Under Section 5 of the Voting Rights Act of 1965, that determination must be made initially by either the Attorney General of the United States or by the District Court for the District of Columbia. Before implementing this plan, the School Board and Police Jury must comply with Section 5 and obtain such approval. Allen v. State Board of Elections, 393 U.S. 544, 89 S. Ct. 817, 22 L.Ed.2d 1 (1969). The Court does note, however, that the Negro plaintiffs in number 17633, have informed the Court that they do not oppose the new plan.

■ Both School Board and Police Jury have requested that they not be required to implement the new districting plan with new elections for all members, but that all current board members and police jurors be allowed to serve out their normal terms of office. In the case of the School Board, this would mean that six current members would serve until December, 1974, and five members until December, 1976. Three members to be elected under the new plan would take office in December of this year. In the case of the Police Jury, all the current jurors would serve until December of 1976. Both sets of plaintiffs adamantly oppose any extension of terms for the Police Jurors and School Board members. Since all the current members of both bodies were elected from concededly malapportioned districts, they cannot continue to serve any longer than is absolutely necessary. New elections for all members of both bodies must accordingly be held to coincide with the next regular parish elections in November of this year. Because School Board members are required by state law to serve staggered terms, the Board will determine by lot which members will run for two and four-year terms.

The Court regrets the necessity of having to order new elections. Under the law of Louisiana as contained in Act No. 424 of 1968, it was provided that:

"A. All parish governing authorities the form of government of which provides for the election of all or part of its members from wards, districts or other subdivisions *shall within six months after the official release of every decennial census,* examine the apportionment plan of its body to determine if there exists any substantial variation in the representation of the election districts. After this examination the body *shall* by ordinance adopted by a majority of the members thereof, either declare its apportionment to be equitable and continue its existing apportionment plan or provide for a new apportionment plan.

B. If reapportionment be necessary it shall be made effective at the end of the term of the incumbent officials." (LSA–R.S. 33:1411, emphasis supplied.)

Although this legislative command was clear and unequivocal, it was not followed by these two defendant governing bodies. Clearly, it was the intent of the Louisiana legislature to bring about reapportionment according to Baker v. Carr, supra, and Avery v. Midland County, supra, so that it could be implemented at the end of the term of the then incumbents. Had they done so, the Police Jury members just elected would not be faced with reelection at this time.

In the case of School Board members, state law requires that they be elected for staggered terms so that not more than one-third of the entire Board be changed at any one election. LSA–R.S. 17:71.1, 71.2. A new election of the entire board under reapportionment is clearly required.

State law must be followed as closely as possible in reapportionment cases. In ordering new elections, this Court is simply requiring the bodies in question to comply with the State's own laws.

Both the Police Jury and School Board were grossly malapportioned. Representation varied from a low of −60% in the second ward to a high of +67% in the first ward, a total deviation of 127% from the average of 3077 persons residing in the parish per member.

We do not now decide that the present incumbents were illegally elected. They shall continue to serve under the weighted vote plan until the plans approved this day are implemented according to our Decree.

This Court will enter decrees adopting the plan proposed by the School Board and Police Jury and will order that new elections for all positions on both bodies be held to coincide with the regular parish elections in November of this year. Before implementation, however, approval must be obtained under Section 5 of the Voting Rights Act.