No. 80–1237. Uvalde Consolidated Independent School District et al. *v.* United States. C. A. 5th Cir. Certiorari denied.

Justice Rehnquist, dissenting.

In this case, the Attorney General has filed a complaint under § 2 of the Voting Rights Act of 1965, 79 Stat. 437, as amended in 1975, 42 U. S. C. § 1973,[1] alleging that petitioner School District's at-large system of electing members " 'has been implemented with the intent and purpose of causing . . . irreparable injury to Mexican-American voters . . . by effectively and purposefully precluding them from meaningful access to the political process . . . .' " 625 F. 2d 547, 548–549 (CA5 1980). The complaint further alleges:

> "[T]he seven member Board of Trustees of the Uvalde Consolidated Independent School District is elected at-large;
> "approximately fifty percent of the population of the school district is Mexican-American, but Mexican-American voters' residences are concentrated in one part of the City of Uvalde;

---

[1] The statute was amended to include the italicized below:

"No voting qualification or prerequisite to voting, or standard, practice, or procedure shall be imposed or implied by any State or political subdivision to deny or abridge the right of any citizen of the United States to vote on account of race or color, *or in contravention of the guarantees set forth in § 4(f)(2)* [42 U. S. C. § 1973b (f)(2)]." 89 Stat. 402.

The guarantees of § 1973b (f)(2) assure against any denial or abridgment of the right to vote because the voter is a member of a language minority group. Congress enacted this amendment to § 2 pursuant to its power to enforce the guarantees of both the Fourteenth and Fifteenth Amendments. 42 U. S. C. § 1973b (f)(1).

"only one Mexican-American has ever been elected to the Board of Trustees and currently no Mexican-Americans serve on the Board; [2]

"voting is normally along racial lines;

"the Board has discriminated against Mexican-Americans in the past by operating intentionally segregated elementary schools and is unresponsive to the needs of the Mexican-American community;

"as a result of the school district's election system, Mexican-Americans have less opportunity than 'whites' to participate in the political process and to elect candidates of their choice to the Board." *Id.,* at 549 (footnote omitted).

The United States District Court for the Western District of Texas dismissed the suit for failure to state a claim upon which relief could be granted. 461 F. Supp. 117 (1978). It concluded that the Fifteenth Amendment, upon which § 2 of the Act rests,[3] applies only to practices which directly affect access to the ballot and is thus not available to challenge at-large election districts on the basis of so-called "vote dilution."

The Court of Appeals reversed, finding that respondent had stated a cause of action under the Fifteenth Amendment. It canvassed the various opinions in *Mobile* v. *City of Bolden,* 446 U. S. 55 (1980), and concluded that a majority of *this* Court had held that the *Fifteenth* Amendment prohibits not just the actual prevention or hindrance of people from voting, but also purposeful vote dilution. The Court of Appeals, however, did not rest its decision on that ground alone. It

---

[2] As the court below noted, the United States now stipulates that two Mexican-Americans have recently been elected. 625 F. 2d 547, 549, n. 2 (CA5 1980).

[3] The Fifteenth Amendment provides: "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude."

looked to the 1975 amendment of § 2. The court held that even if the Fifteenth Amendment does not proscribe at-large voting districts purposefully adopted to dilute the voting strength of minorities, the Fourteenth Amendment clearly does. According to the court, when Congress, pursuant to its authority to enforce the guarantees of the Fourteenth Amendment, extended § 2 to protect the right to vote of linguistic minorities, it did so cognizant of the problem of vote dilution and intended to incorporate the broad reach of the Fourteenth Amendment into § 2 of the Act. Thus, in the court's view, respondent had stated a cause of action under § 2 of the Act as amended. Judge Hill concurred on the grounds that it was unnecessary to determine whether the *Fifteenth* Amendment applies to the voting practices alleged in the complaint, because the court properly found that the 1975 amendment incorporated the Fourteenth Amendment.[4]

Because I believe that the Court of Appeals has misread the language, holding, and spirit of this Court's decision in *Bolden,* and has misconstrued the congressional purpose behind the 1975 amendment, I dissent from the denial of the petition for certiorari. In the first place, as I read the plurality decision in *Bolden,* it held that the Fifteenth Amendment proscribed only the denial or the abridgment of the right to vote: When blacks "register and vote without hindrance," the provisions of the Fifteenth Amendment are thus

---

[4] The Court of Appeals also concluded that a school board is a "political subdivision" within the meaning of § 2. In *Dougherty County Board of Education* v. *White,* 439 U. S. 32 (1978), and *United States* v. *Sheffield Board of Comm'rs,* 435 U. S. 110 (1978), this Court broadly construed the terms "State or political subdivision" so as to subject the entities at issue there to the § 5 preclearance requirement. By contrast, in *City of Rome* v. *United States,* 446 U. S. 156 (1980), the Court narrowly construed the terms for the purpose of limiting resort to the Act's so called "bailout" provisions. Because this Court has not yet settled on the proper construction of the term "political subdivision", this issue also strikes me as worthy of review by this Court.

satisfied. 446 U. S., at 65. In contrast to the Fourteenth Amendment, there is nothing in the Fifteenth Amendment which prohibits at-large election districts. See *Beer* v. *United States,* 425 U. S. 130, 142, n. 14 (1976) (observing that "[t]here is no decision in this Court holding a legislative apportionment or reapportionment violative of the Fifteenth Amendment"). Because the Attorney General does not allege in this case that Mexican-Americans have been prohibited or discouraged from voting, I do not believe that the Attorney General has stated a cause of action under the Fifteenth Amendment and, consequently, § 2 of the Voting Rights Act.

With respect to the 1975 amendment, I do not view that amendment as changing the substantive law of § 2. The purpose of the change was to extend § 2 protections to a new group of persons, namely, members of language minorities such as Mexican-Americans. See S. Rep. No. 94–295, p. 24 (1975) (the amendment was made to "broaden [the Act's] special coverage to new geographic areas . . ."). Congress based the addition to § 2 on its power to enforce the guarantees of the Fourteenth Amendment in order to ensure the constitutionality of the change, not to allow language minorities to challenge at-large voting districts on grounds of vote dilution. The legislative history reveals that Congress was concerned about the possibility that certain language minority groups might not be considered members of a "race or color" group protected under the Fifteenth Amendment. Thus, Congress based the 1975 "expansion amendment" on *both* the Fourteenth and Fifteenth Amendments in order to "doubly insure the constitutional basis for the Act." *Id.,* at 47–48. In sum, the Court of Appeals quite clearly erred in concluding that the 1975 amendment to § 2 incorporates the Fourteenth Amendment's prohibition of purposeful vote dilution. Even as amended, § 2 simply does not permit the Attorney General to bring suits challenging at-large electoral systems.

Moreover, even if § 2 does incorporate the prohibitions of

the Fourteenth Amendment, I do not believe that the Attorney General's allegations are sufficient to survive a motion to dismiss. The plurality opinion in *Mobile* v. *City of Bolden, supra,* observed that the Court of Appeals there held that a plaintiff may establish purposeful discrimination by adducing evidence that satisfies the standards announced in its earlier decision in *Zimmer* v. *McKeithen,* 485 F. 2d 1297 (CA5 1973). We rejected that view:

> "That approach, however, is inconsistent with our decisions in *Washington* v. *Davis,* [426 U. S. 229 (1976)], and *Arlington Heights* [v. *Metropolitan Housing Dev. Corp.,* 429 U. S. 252 (1977)]. Although the presence of the indicia relied on in *Zimmer* may afford some evidence of a discriminatory purpose, satisfaction of those criteria is not of itself sufficient proof of such a purpose. The so-called *Zimmer* criteria upon which the District Court and the Court of Appeals relied were most assuredly insufficient to prove an unconstitutionally discriminatory purpose in the present case." 446 U. S., at 73.

Yet if one reads the specific allegations of the complaint heretofore set forth, they bear a striking resemblance to the so-called *Zimmer* criteria. If, as is alleged, approximately 50% of the population of the School District is Mexican-American, one wonders why an at-large system should result in no Mexican-American being elected. Indeed, the fact that two Mexican-Americans *have* recently been elected under the at-large system belies the Attorney General's allegations. In *Bolden,* we rejected emphatically the theory that every "political group" or at least every such group that is in the minority, has a federal constitutional right to elect candidates in proportion to its numbers. 446 U. S., at 75. A court-imposed requirement that a specified number of Mexican-American seats be guaranteed by virtue of the approximately 50% Mexican-American population would, in my view, be clearly unwarranted.

Finally, it is important to remember that this is the beginning of a decennium which will involve a good deal of reapportionment. That task will fall primarily to legislators. "The Court has repeatedly held that redistricting and reapportioning legislative bodies is a legislative task which the federal courts should make every effort not to pre-empt. *Connor* v. *Finch,* 431 U. S. 407, 414–415 (1977); *Chapman* v. *Meier,* 420 U. S. 1, 27 (1975); *Gaffney* v. *Cummings,* 412 U. S. 735, 749 (1973); *Burns* v. *Richardson,* 384 U. S. 73, 84–85 (1966)." *Wise* v. *Lipscomb,* 437 U. S. 535, 539–540 (1978). In *Minnesota State Senate* v. *Beens,* 406 U. S. 187, 200 (1972), we concluded that "the action of the three-judge court in so drastically changing the number of legislative districts and the size of the respective houses of the Minnesota Legislature is not required by the Federal Constitution and is not justified as an exercise of federal judicial power." Accordingly, those legislators who embark on the difficult and politically sensitive task of reapportionment will need clear rules for determining whether a particular plan for a particular governmental district is or is not constitutional.

Unfortunately, those legislators will not be aided by the decisions of this Court, decisions which are obviously not wholly in harmony with one another. Cf. *Burns* v. *Richardson,* 384 U. S. 73 (1966); *East Carroll Parish School Board* v. *Marshall,* 424 U. S. 636 (1976); *White* v. *Regester,* 412 U. S. 755, 765 (1973); *Whitcomb* v. *Chavis,* 403 U. S. 124 (1971); *Connor* v. *Johnson,* 402 U. S. 690 (1971); *Mahan* v. *Howell,* 410 U. S. 315 (1973); *Gaffney* v. *Cummings,* 412 U. S. 735, 749 (1973). The decision below is no exception: it will further confuse an already confused area. If all of the various governmental units subject to the ever-oscillating "one-person, one-vote" rule are to have even a fighting chance of reapportioning themselves within constitutional limits, rather than to be remitted to court-ordered redistricting, with all of the additional legal baggage which such plans bring with them, this Court should make every effort to

clarify what the Voting Rights Act and the Federal Constitution require.

For the foregoing reasons, I dissent from the denial of the petition for certiorari.