Barney QUILTER, et al., Plaintiffs,

v.

George V. VOINOVICH,
et al., Defendants.

No. 5:91 CV 2219.

United States District Court,
N.D. Ohio, E.D.

March 10, 1992.

Timothy F. Scanlon, Scanlon & Gearinger, Akron, Ohio, Armistead W. Gilliam, Jr., Ann Wightman, Faruki, Gilliam & Ireland, Dayton, Ohio, for plaintiffs.

Timothy F. Scanlon, Scanlon & Gearinger, Akron, Ohio, Thomas I. Atkins, Sr., Brooklyn, N.Y., Armistead W. Gilliam, Jr., Ann Wightman, Laura A. Sanom, Faruki, Gilliam & Ireland, Dayton, Ohio, for plaintiff William L. Mallory.

Orla Ellis Collier, III, Norton Victor Goodman, James F. DeLeone, Mark D. Tucker, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, Charles M. Rosenberg, Maynard A. Buck, III, Jeremy Gilman, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, for defendants.

Armistead W. Gilliam, Jr., Ann Wightman, Faruki, Gilliam & Ireland, Dayton, Ohio, for intervenors-plaintiffs.

Before NATHANIEL R. JONES, Circuit Judge, PECK, Senior Circuit Judge, and DOWD, District Judge.

## ORDER

On January 31, 1992, this Court filed its opinion and order holding that there is no legal mandate requiring the creation of majority-minority districts wherever possible in the 1991 Apportionment Plan for the Ohio General Assembly (the Plan). Furthermore, this Court found that the Apportionment Board had not conducted a totality of the circumstances analysis sufficient to establish a violation of the Voting Rights Act and justify the majority-minori-

ty districts delineated in the Plan. The Board was ordered to reconsider the Plan and either show justification under the totality of the circumstances test for the majority-minority districts or submit a revised plan.

On February 19, 1992, the Defendants submitted, *inter alia,* the Board's Findings and Conclusions and what they termed a revised apportionment plan which, however, is identical to the Plan except for correction of "technical errors." The Board's Findings include a totality of the circumstances analysis.

After careful review, we find that the Board's totality of the circumstances analysis contains only meager information that was not previously before this Court. Furthermore, the information is not of assistance in answering the "question whether the political processes are 'equally open' ", nor does the analysis constitute the "searching practical evaluation of the 'past and present reality' " contemplated by the legislative history of the 1982 amendments to the Voting Rights Act. S.Rep. No. 417, 97th Cong.2d Sess. 30, U.S.Code Cong. & Admin.News 1982, pp. 177, 208. Accordingly, the Board fails once again to justify its wholesale creation of majority-minority districts, thus rendering the plan, as submitted, violative of the Voting Rights Act of 1965. As noted in the Conclusion of our January 31, 1992 order and opinion, it has heretofore been unnecessary in these proceedings to reach the constitutional issues present, but we now proceed to decide that the plan as submitted is also violative of the Fifteenth Amendment of the United States Constitution. "[O]nce a State's leg-islative apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan." *Reynolds v. Sims,* 377 U.S. 533, 585, 84 S.Ct. 1362, 1393, 12 L.Ed.2d 506 (1964). It is therefore incumbent on this court to enjoin any election for the Ohio General Assembly until a constitutional plan is submitted by the Special Master and approved by this court.[1] Accordingly, the date of May 5, 1992 for the holding of the Ohio primary election is vacated to the extent that candidates for election to the General Assembly are concerned, and the appropriate election officials are enjoined and directed to cause such primary election to be held on June 2, 1992, provided, however, that on proper showing the court may provide an alternate date.

The plan herein above referenced marks the second time that the Apportionment Board has failed to meet the standards mandated by federal law even in the face of clear and unambiguous legal direction from this Court. In this situation it is concluded that exceptional circumstances exist which require the appointment of a Special Master to prepare an acceptable apportionment plan. The Court therefore hereby appoints Lawrence A. Kane, Jr., 1900 Chemed Center, 255 E. 5th St., Cincinnati, Ohio 45202, as such Special Master, for the purpose of submitting a plan which complies with federal and state law and this Court's January 31 order and opinion. This appointment is made pursuant to Rule 53 of the Federal Rules of Civil Procedure

---

1. The most explicit statement of the power to enjoin state elections appears in *Sixty–Seventh Minnesota State Senate v. Beens,* 406 U.S. 187, 201 n. 11, 92 S.Ct. 1477, 1486 n. 11, 32 L.Ed.2d 1 (1972). The three-judge district court found that the act apportioning the Minnesota legislature violated the Constitution, and accordingly, "enjoined the Secretary of State and the county auditors *from conducting future elections* under the Act, and appointed two Special Masters (a third was named later) to aid the court in formulating a new apportionment plan." *Id.* at 191, 92 S.Ct. at 1481. The court-ordered plan reduced the number of state legislative districts from 67 to 35. *Id.* at 188, 92 S.Ct. at 1479.

Although the Court found that the district court erred in so drastically reducing the legislature's size, *id.* at 199, 92 S.Ct. at 1485, the Court never questioned the power of the district court to reapportion the state legislature, *id.* at 195, 92 S.Ct. at 1483. The court's opinion also never questioned the power of the district court to postpone the elections: "If time presses too seriously, the District Court has the power appropriately to extend the time limitations imposed by state law." *Id.* at 201 n. 11, 92 S.Ct. at 1486 n. 11. On remand, the district court revised its court-ordered reapportionment plan and did extend the time limits. *Beens v. Erdahl,* 349 F.Supp. 97, 99–100 (D.Minn.1972).

and the master herein appointed is to be sworn to accept the responsibilities and obligations established therein. In addition, the special master is specifically authorized and empowered to employ an expert or experts versed in the subject area and such other expert and lay assistance as may be appropriate in the circumstances. Costs incurred shall be assessed against the State of Ohio.

IT IS SO ORDERED.

DOWD, District Judge, dissenting:

I find that the defendants have complied with the order of my colleagues published on January 31, 1992. The defendants were instructed to reconsider the 1991 apportionment plan and submit a revised plan unless the defendants were able to show a justification for the creation of additional majority-minority districts in the State of Ohio. In response the defendants filed an exhaustive set of fact findings [1] and engaged in a slight modification of the majority-minority districts.[2]

The basis for the creation of the majority-minority districts has been dismissed with the criticism that the justification is on a state-wide basis and does not include an analysis or justification on a district by district basis. I read the latest opinion of my colleagues to establish the proposition that an apportionment body, be it a legislative body or, as in Ohio, a constitutionally created body, is not permitted to take into consideration the Voting Rights Act in the apportionment process unless the body, be it the legislature or the specifically designated body such as the governor, auditor of state, secretary of state and the two representatives from the General Assembly conduct a judicial like proceeding such as the case that gave rise to the *Armour decision*.[3] I again reject that proposition as unsound and not in keeping with precedent [4] or the legislative history of the Voting Rights Act.

Moreover, in this case, despite the sweeping language of the majority opinion, the recently filed fact findings of the defendants do address the creation on a specific basis the proposed majority-minority districts contained in the 1991 Apportionment Plan.

I commend my colleagues for the order to the extent it identifies for the citizens of Ohio the ramifications of its order today appointing a special master. As indicated, the May primary will not take place as scheduled unless a higher court should see fit to stay the majority's order. The General Assembly is now faced with the need to consider whether to move back the May primary until the designated date of June 2. However, the majority's opinion fails to address whether prospective candidates

---

1. On February 20, 1992 the defendants Voinovich, Taft and Aronoff filed findings and conclusions with respect to the creation of the majority-minority districts. The findings number 254 paragraphs and 106 pages and address such issues as History of Official Discrimination, Racial Bloc Voting, Racial Barriers to Effective Participation, Effects of Discrimination, Summary of Unemployment Rates by Race, Showing Disparate Unemployment Rates as to Blacks, Mean Household Income showing a great disparity between white and black households, an Analysis of Families Living Below Poverty Level, showing great disparity between white and black families, Education Findings, demonstrating that the percentage of blacks that have not completed high school and who have not completed one or more years of college are significantly higher than whites, findings that the value of housing between white families and black families are grossly disproportionate, the effects of overt or subtle racial appeals in the political process, the extent to which minorities had been elected to public office, and the lack of

success of minorities in the election process in the major urban counties in Ohio other than Cuyahoga.

2. After the majority of this Court remanded the 1991 Apportionment Plan to the Apportionment Board, downward adjustments as to black voters were made in six of the house districts represented by black incumbents with an increase in House District 38 represented by black incumbent Roberts.

3. 775 F.Supp. 1044 (N.D.Ohio 1991).

4. *See Garza v. City of Los Angeles*, 918 F.2d 763 (9th Cir.1990). In *Garza*, the Court held that an apportionment Board has an obligation to reapportion when the districts do not meet the requirements based on the total population of the state divided by the number of districts designated in the state's constitution. A *failure* to reapportion, according to the Court, would be a violation of the Voting Rights Act.

will be given an opportunity to file nominating petitions after the legislative boundaries are finally determined. Despite my commendation, I am apprehensive that the work of the master and considerations of the challenges that are certain to flow from his recommendations place in jeopardy the revised date of June 2 for holding the primary for the General Assembly candidates.

I believe the order to the master also suffers from a lack of comprehensive instructions. The master is given no directions on the following issues.

1. What data base is the master to consider in responding to the reference? Is he to consider or ignore the extensive testimony received by the Apportionment Board as it conducted public hearings across the State of Ohio in 1991 before the 1991 apportionment plan was adopted? Is the master to ignore the Voting Rights Act in arriving at his recommendation? Is the master to conduct public hearings before making his recommendation?

2. The 1981 Apportionment Plan created four majority-minority districts. The plan advanced in the 1991 Apportionment Plan as adopted calls for eight majority-minority districts. The plan advanced by the plaintiffs Quilter and Ferguson, also members of the Apportionment Board, proposed the creation of an additional two majority-minority districts. The rejection by the majority of this panel of the 1991 Apportionment Plan is anchored in the creation of the additional four districts without the requisite justification as deemed necessary by the majority. QUERY: Is the master free to recommend on this issue as to the number of majority-minority districts and, if so, based on what criteria? [5]

3. How should the master consider and apply, if at all, the decision of the Ohio Supreme Court in its decision in the case of *Voinovich v. Ferguson* (1992) 63 Ohio St.3d 198, 586 N.E.2d 1020? [6]

4. Should the master, as recommended by the defendants in its plan, create single county districts for the three counties of Fairfield, Wayne and Ashtabula, or disregard the discretionary decision of the defendants and adopt the view of the plaintiffs Ferguson and Quilter which declined to provide those three counties whole county district status? [7]

5. When is the master to report to this court? [8]

---

**5.** The Court notes that while the plaintiffs in this action criticized the defendants Voinovich, Taft and Aronoff, for creating eight majority-minority districts in compliance with the Voting Rights Act, the minority plan proposed by the Democrats contained two new majority-minority districts without even an attempt to make the fact findings the majority declares necessary to justify the creation of additional majority-minority districts.

**6.** Justice Resnick of the Ohio Supreme Court authored a dissent in which she was critical of the 1991 Apportionment Plan as adopted by the three defendants Voinovich, Taft and Aronoff. The plaintiffs have seized upon the Resnick dissent and suggest that the 1991 Apportionment should be revisited in the context of the Resnick dissent. However, Justice Douglas' opinion is highly critical of the Resnick dissent and points out that the plaintiffs in this case, Ferguson and Quilter, declined to present the issues raised in the Resnick dissent. Consequently, significant issues of both collateral estoppel and abstention apply with respect to what consideration, if any, the Master is to give to the Ohio Supreme Court's decision in *Voinovich v. Ferguson.*

**7.** *See* Article XI, § 10(B) which provides:

Each county containing population between 90 and 95% of the ratio or between 105 and 110% of the ratio *may* be designated a representative district. (emphasis added)

**8.** The plaintiffs filed in this case on March 10, 1992 a motion requesting this Court to order the Secretary of State to show cause why the Ohio Primary Election of May 5 should not be postponed pending the establishment of lawful legislative boundaries for the Ohio General Assembly. The Order of the Court approved by the majority of the panel inferentially addresses the motion by continuing the primary election for the Ohio General Assembly until June 2, 1992. As pointed out by the plaintiffs, Ohio Rev.Code § 3513.05(D), provides that *sixty* days before the primary date, the Secretary of State must "certify to each board [of elections] in the state the forms of the official ballots to be used at such primary election together with the names of the candidates to be printed thereon...." (emphasis added).

The sixtieth day before June 2, 1992 is, by this Court's calculation, April 2, 1992. To meet that date and to allow time for candidates to file nominating petitions after the report of the Master is received and the Court hears objections thereto and enters a final order, it would appear

I have outlined some of the problems that the majority opinion creates to emphasize again the view that the responsible effort on the part of the defendants Voinovich, Taft and Aronoff to fairly reapportion the State of Ohio consistent with the provisions of the Ohio Constitution and the mandate of the Voting Rights Act does not warrant the majority's unprecedented judicial interference. Moreover, electoral chaos in Ohio for 1992 appears inevitable. I must respectfully dissent.

---

that the Master's report should be filed with this Court by no later than March 16, 1992. Such a filing would give all interested parties seven days to file objections, i.e., by March 23, 1992 and then give this Court two days to respond by filing its final order on March 25, 1992. Under that scenario, prospective candidates would have until April 1, 1992 to file nominating petitions and the Secretary of State would have to respond under the provisions of O.R.C. 3513.-05(D) by April 2, 1992.